IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DALE LUDEMAN,

                Plaintiff,

vs.                                      Case No. 07 C 50216

INDUSTRIAL MOLDS, INC.,

                Defendant.

### ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

Defendant, Industrial Molds, by its attorneys, McGreevy Williams, P.C., states as follows for its answer to the Plaintiff's amended complaint:

### BACKGROUND

**A.    Parties and Jurisdiction**

    1.    This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended by the Civil Rights Act of 1991 and under Illinois state law.

ANSWER:    Defendant neither admits nor denies the allegations of paragraph 1 on the basis that said allegations consist of legal conclusions which require no response by way of pleading.

    2.    Dale Ludeman ("Mr. Ludeman") is a resident of the state of Illinois and at all times relevant hereto has resided in the state of Illinois. Mr. Ludeman is a citizen of the United States.

ANSWER:    Defendant admits the allegations of paragraph 2.

3. Industrial Molds, Inc. ("Industrial Molds") is an Illinois corporation licensed and doing business in the state of Illinois and is and at all times mentioned herein, an employer within the meaning of Title VII.

ANSWER: Defendant admits the allegations of paragraph 3.

4. Plaintiff, from January 2002 to August 28, 2006 was employed as President of Industrial Molds.

ANSWER: Defendant admits the allegations of paragraph 4.

5. At all relevant times, defendant employed more than 15 people.

ANSWER: Defendant admits the allegations of paragraph 5.

6. All preconditions for venue and jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5ff](3), have been satisfied.

    (a) Mr. Ludeman filed a timely charge of employment discrimination on the basis of religious discrimination with the Equal Employment Opportunity commission ("EEOC").

    (b) The EEOC issued a "right to sue" letter on August 14, 2007.

    (c) Mr. Ludeman filed this complaint within 90 days of receiving the "right to sue" letter from the EEOC.

ANSWER: Defendant denies the allegations of the first sentence of paragraph 6 and 6 (a), but admits 6 (b) and 6 (c).

7. Pendent Jurisdiction under 28 U.S.C. § 1367 allows the court to hear Mr. Ludeman's state law claims.

ANSWER:　Defendant admits the allegations of paragraph 7.

8.　Venue is appropriate under 28 U.S.C. § 1391 as Mr. Ludeman is an Illinois resident of this district, Industrial Molds is an Illinois corporation with headquarters in this district and the contract was agreed to and performed in this district.

ANSWER:　Defendant admits the allegations of paragraph 8.

9.　Mr. Ludeman requests and demands a trial by Jury.

ANSWER:　Defendant neither admits nor denies the allegations of paragraph 9 on the basis that said allegations consist of legal conclusions which require no response by way of pleading.

**B.　Statement of Facts**

10.　Mr. Ludeman became President of Industrial Molds in 2002.

ANSWER:　Defendant admits the allegations of paragraph 10.

11.　On August 9, 2002, Mr. Ludeman entered into an employment contract (the "Contract") with Industrial Molds. The Contract provided for various terms of his employment, including, but not limited to: a job description and conditions of termination. A true and correct copy of the Contract is attached to this Amended Complaint as Exhibit A.

ANSWER:　Defendant admits the allegations of paragraph 11.

12.　Section 5B of the Contract specifically states that Ludeman is entitled to payment of an amount equivalent to two years' income in the event that Industrial Molds terminates his employment without "cause."

ANSWER:　Defendant admits the allegations of paragraph 12.

3

13. The Contract defines "cause" in Section 5D.

ANSWER: Defendant admits the allegations of paragraph 13.

14. Section 5D also requires Industrial Molds to give Mr. Ludeman notice of intent to terminate for cause and thirty days to correct the conduct in the event that Industrial Molds identifies conduct that could serve as grounds for termination for cause but where that conduct is "capable of being cured."

ANSWER: Defendant denies the allegations of paragraph 14 on the basis that the contract language speaks for itself.

15. The majority owner of Industrial Molds is Jack Peterson.

ANSWER: Defendant admits the allegations of paragraph 15.

16. In 2001, when Mr. Ludeman went to Mr. Peterson's house for a discussion regarding becoming President of Industrial Molds, Jack Peterson, his wife, Marla Peterson, and his children Timothy Peterson and Eric Peterson stressed that Industrial Molds was a "Christian company" and interrogated Mr. Ludeman about his religious beliefs.

ANSWER: Defendant denies the allegations of paragraph 16.

17. Several years later, Jack Peterson accused Mr. Ludeman of being a "Bad Christian."

ANSWER: Defendant denies the allegations of paragraph 17.

18. In 2005 and 2006, Jack Peterson lectured Mr. Ludeman repeatedly about the fact that "God was the CEO" of Industrial Molds, that Mr. Ludeman was not behaving in a "Christian manner," and that Mr. Ludeman was not "displaying confidence with [his] faith in

4

God to the employees" as Jack Peterson did.

ANSWER: Defendant denies the allegations of paragraph 18.

19. In a letter to Mr. Ludeman on April 3, 2006, Peterson stated "This Company was founded on faith in God and must continue that way'; "God has given us this company, but everything seems to revolve around you"; that Industrial Molds should have a "God identity"; and that the first of three objectives for Industrial Molds was a "God honoring identity."

ANSWER: Defendant denies the allegations of paragraph 19 on the basis that the allegations are an incomplete recital of the communication in question.

20. On another occasion in 2006, Jack Peterson referred to Mr. Ludeman as Satan or the Devil and stated that Mr. Ludeman had a lack of faith and was not leading in a Godly manner.

ANSWER: Defendant denies the allegations of paragraph 20.

21. On August 28, 2006, Mr. Ludeman received a termination letter (the "Letter') from Industrial Molds. A true and correct copy of the Letter is attached hereto as Exhibit B. In the Letter, Industrial Molds terminated Mr. Ludeman effective that day, alleging that Mr. Ludeman had committed actions that were substantially detrimental to the best interests of Industrial Molds and that Mr. Ludeman had repeatedly been warned regarding the conduct and therefore his termination was immediate. The Letter also indicated that the termination invoked the restrictions of Section 5(A), the non-compete clause.

ANSWER: Defendant admits the allegations of paragraph 21.

22. The Letter listed several erroneous claims that Industrial Molds contended were cause for his termination, none of which constitute "cause" as defined in the Contract, and none of which are factually true. Industrial Molds' termination of Mr. Ludeman was done without "cause" as that term is defined in the Contract.

ANSWER: Defendant denies the allegations of paragraph 22.

23. The Letter lacks any reference to prior notice of intent to terminate or a thirty-day opportunity for Mr. Ludeman to cure alleged misconduct, and Industrial Molds failed to give Mr. Ludeman proper notice.

ANSWER: Defendant denies the allegations of paragraph 23.

24. Industrial Molds has refused to give Mr. Ludeman the compensation to which Mr. Ludeman is entitled under the Contract in the event of termination without cause.

ANSWER: Defendant denies the allegations of paragraph 24.

25. Section 5E requires Industrial Molds to pay Mr. Ludeman interest on the amount due in the event of termination without cause. Section 6 specifies that the prevailing party of any dispute regarding the Contract may recover all attorneys' fees and costs.

ANSWER: Defendant denies the allegations of paragraph 25 on the basis that the Contract speaks for itself and Defendant further denies liability for the amounts claimed.

26. Industrial Molds' termination of Mr. Ludeman was without cause and Industrial Molds has violated the Contract.

ANSWER: Defendant denies the allegations of paragraph 26.

## COUNT I
### (Religious Discrimination in violation of Sec. 703 of Title VII, 42 U.S.C.§2000e-2)

27. The Defendant adopts and incorporates its answers to paragraphs 1-26.

28. Industrial Molds claimed the termination was because Mr. Ludeman acted in a manner substantially detrimental to the best interests of the company.

ANSWER: Defendant admits the allegations of paragraph 28.

29. The reason provided by Industrial Molds was false.

ANSWER: Defendant denies the allegations of paragraph 29.

30. Industrial Molds discriminated against Mr. Ludeman on the basis of his perceived religious beliefs. A significant motivating factor in the termination of Mr. Ludeman by Industrial Molds was Jack Peterson's view that Mr. Ludeman did not follow Jack Peterson's form of Christianity.

ANSWER: Defendant denies the allegations of paragraph 30.

31. Industrial Molds knowingly and intentionally discriminated against Mr. Ludeman on the basis of his religious beliefs or Industrial Molds' perception of Mr. Ludeman's religious beliefs in violation of Sec. 703 of Title VII, 42 U.S.C. §2000e-2.

ANSWER: Defendant denies the allegations of paragraph 31.

32. Industrial Molds' actions were intentional, malicious and with reckless disregard for Mr. Ludeman's rights and caused Mr. Ludeman damages, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries

for which he should be compensated.

ANSWER:   Defendant denies the allegations of paragraph 32.

## COUNT II
### (Quid Pro Quo Religious Harassment in violation of Sec. 703 of Title VII, 42 U.S.C.§2000e-2)

33.   The Defendant adopts and incorporates its answers to paragraphs 1-32.

34.   Jack Peterson's comments and threats that Mr. Ludeman was a "Bad Christian," that he was not behaving in a "Christian manner," along with other comments related to his expectations regarding Mr. Ludeman's religious beliefs and expectations that the company would honor God, constitute a requirement that Mr. Ludeman's adherence to Jack Peterson's set of religious values was a condition of his continued employment.

ANSWER:   Defendant denies the allegations of paragraph 34.

35.   Jack Peterson's comments also constituted threats that Mr. Ludeman become a better Christian or face termination.

ANSWER:   Defendant denies the allegations of paragraph 35.

36.   These actions constitute Quid Pro Quo Religious Harassment prohibited by and in violation of Sec. 703 of Title VII., 42 U.S.C. §2000e-2.

ANSWER:   Defendant denies the allegations of paragraph 36.

37.   Industrial Molds' actions were intentional, malicious and with reckless disregard for Mr. Ludeman's rights and caused Mr. Ludeman damages, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries

8

for which he should be compensated.

ANSWER:　Defendant denies the allegations of paragraph 37.

## COUNT III
## (Hostile Work Environment in violation of Sec. 703 of Title VII, 42 U.S.C. §2000e-2)

38.　The Defendant adopts and incorporates its answers to paragraphs 1-37.

39.　Jack Peterson's numerous harassing and intimidating statements created a hostile work in violation of Sec. 703 of Title VII, 42 U.S.C. §2000e-2.

ANSWER:　Defendant denies the allegations of paragraph 39.

40.　Industrial Molds' actions were intentional, malicious and with reckless disregard for Mr. Ludeman's rights and caused Mr. Ludeman damages, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for which he should be compensated.

ANSWER:　Defendant denies the allegations of paragraph 40.

## COUNT IV
## (Breach of Contract)

41.　The Defendant adopts and incorporates its answers to paragraphs 1-40.

42.　The Contract is a valid and enforceable contract.

ANSWER:　The Defendant admits the allegations of paragraph 42.

43. Industrial Molds breached Section 5B of the Contract by terminating Ludeman without cause and then refusing to pay Ludeman the compensation due to him under the Contract.

ANSWER: The Defendant denies the allegations of paragraph 43.

44. Even if there had been cause to terminate Ludeman, which there was not, Industrial Molds breached the Contract by failing to provide Ludeman with notice of an intent to terminate and an opportunity to cure those causes as required by Section 5D.

ANSWER: The Defendant denies the allegations of paragraph 44.

## AFFIRMATIVE DEFENSES

1. Industrial Molds is an Illinois corporation with its principal place of business at 5175 27th Avenue, Rockford, Illinois, 61109.

2. On information and belief, Dale Ludeman resides at 4265 Centerville Road, Rockford, Illinois, 61102.

3. Industrial Molds is in the business of creating and manufacturing precision molds and plastic injection molds.

4. On August 9, 2002, Industrial Molds entered into an employment contract ("Contract") with Dale Ludeman, a copy of which is attached to Ludeman's Complaint herein as Exhibit "A".

5. Pursuant to the terms of the Contract, Ludeman was to continue to be, and at all times relevant to this litigation was, the President of Industrial Molds.

6. As President of Industrial Molds, Ludeman agreed in the Contract to use his

best efforts, care, and ability to carry out his duties and responsibilities as President of Industrial Molds.

7. Some of these duties, which Ludeman expressly agreed to carry out, and which are listed in Exhibit "A" of the Contract, include, but are not limited to:

> A. Developing and implementing the strategic direction for Industrial Molds;
>
> B. Assessing new business opportunities and pursuing the most promising ones;
>
> C. Providing direction and leadership for the management teams; and
>
> D. Implementing the continual improvement process.

8. Morever, Ludeman agreed to use his ability and best judgment to further the best interests of Industrial Molds.

9. Under the terms of the Contract, Ludeman was susceptible to being fired for cause upon engaging in sustained conduct that is substantially detrimental to the best interests of Industrial Molds.

10. Ludeman's employment as President was terminated on August 28, 2006.

11. As President of Industrial Molds, Ludeman was an officer and agent of Industrial Molds in all respects, and as such, occupied a position of trust and loyalty.

12. As an officer of Industrial Molds, Ludeman had significant managerial authority and supervisory responsibilities and therefore owed duties of care and loyalty to Industrial Molds.

13. The duty of care that Ludeman owed to Industrial Molds required him to, at all times relevant to this litigation, perform his duties and responsibilities as President of Industrial Molds with an amount of care that a careful and prudent person would use in similar circumstances.

14. Ludeman, as President, was required to use his best care, skill, and judgment in the management of the corporation and use these attributes solely for the interest of the corporation and not against the interests of the corporation.

15. As President, Ludeman owed a duty of care to the Company not to enter into transactions or engage in behavior that would cause damage to the corporation or place Ludeman's own interests above those of the corporation.

16. At various points during his tenure as President of Industrial Molds, Ludeman breached this duty of care to Industrial Molds by negligently, recklessly, and/or intentionally failing to exercise proper care, skill, and diligence in managing Industrial Molds.

17. Ludeman breached his duty of care and loyalty towards Industrial Molds in at least the following ways:

   A. Ludeman failed to exercise an option on an A77 Makino machine which resulted in a loss to Industrial Molds of $50,000.00;

   B. In or about January of 2006, Ludeman became aware that one of the various spindles used by Industrial Molds, a Euro S Spindle, was in need of replacement. At various points during the time relevant to this litigation, Ludeman was asked by numerous Company personnel and other management personnel whether a replacement spindle had been ordered. Although a replacement had not in fact been ordered, Ludeman repeatedly lied to individuals and team members and told them that it had been ordered. Ludeman knew the replacement was

12

needed for the efficient and profitable operation of the business, yet he refused to order it and repeatedly misled Industrial Mold's management and employees of the Company into thinking that he did order it. These repeated lies were made to cover Ludeman's failures with respect to the proper management and handling of machines and equipment in the Company and to place his reputation above the interests of the company;

C. Ludeman failed, at numerous points during his tenure as President, to order and insure proper and timely repair of pieces of equipment which were fundamental to the proper operation of the Company and which Ludeman knew required repair for proper operation;.

D. Ludeman improperly, inappropriately, and intentionally subjected the Company to liability for invasion of privacy by directing the information technologies personnel of Industrial Molds to "misdirect" other employee's e-mail communications to Ludeman for his own review. Further, Ludeman wrongfully disparaged employees who questioned him, for example, referring to Cory Price as a "cancer."

E. Ludeman completely failed to have in place and maintain a process for the operation and growth of the Company.

F. Ludeman represented himself, at the time he sought the position of President, as being willing to run the Company under a team approach along with, among others, Tim Peterson, Eric Peterson, and Jack Peterson and, at that time, Ludeman knew and understood that it was a family business. Notwithstanding his representations that he would operate the Company in that fashion, Ludeman repeatedly undermined Tim Peterson and Eric Peterson and used every opportunity available to him to discredit them and disparage them within the Company, which lead to a decline in morale and frustrated the purposes of the Peterson family in hiring Ludeman.

G. At the time of his hire, Ludeman agreed to the formation of a management team which operated above and apart from the actual management structure of the Company including Peterson family members, all of them were to have input in the management of the Company; however, Ludeman disregarded the management team, engaged in unilateral management of the Company, and thereby ignored the management concept and the benefits it would bring to

the Company, all of which resulted in the poor performance of the Company.

H. At the time of his hire, Ludeman represented that the Company would be operated with prudence, honesty, with good judgment, and under a team approach with the Peterson family members as an integral element; however, Ludeman did not operate the Company prudently or honestly, he failed to use good judgment, and he ignored the management approach which included the Peterson family input, all of which lead to the losses alleged infra;

I. In direct contravention of his agreement to operate the Company under a management team along with Peterson family members, Ludeman orchestrated the demotion of Peterson family members so as to frustrate the family and to further damage the ability of the Company to operate on a profitable basis;

J. Ludeman intentionally used gossip and innuendo to undermine the Peterson family and the management team concept all to centralize authority within his office. For example, Ludeman used a run of the mill argument between Eric Peterson and a co-employee in order to harass and annoy Jack Peterson and to attempt to cause disruptions and workforce alienation on the shop floor. Further, Ludeman worked to undermine Jack Peterson by falsely claiming that Jack "was slipping" or was otherwise incompetent.

K. Ludeman, in ignorance of the management team approach and without the input of the management team placed Dan Hamilton in charge of the manufacturing process even though Hamilton was ill-equipped to handled the job and in fact curtailed the manufacturing processes and work flow based on incorrect and mistaken analysis regarding capacity.

L. Further, Ludeman caused Tim Peterson to step down as sales manager based on representation that a "professional" sales person would be installed. Ludeman, however, did not do so and instead placed in the position a person without professional sales experience with the skills necessary to fulfill the position of the job, all of which lead to declines in sales. Even after the Petersons complained to Ludeman that the job placement as aforesaid was a mistake, Ludeman ignored the management team and kept management in place.

    M.    Ludeman managed Industrial Molds' assets as though he had no accountability to the Company or its shareholders by, for example, disposing of assets with little or no payment to the Company such as a vertical milling machine, as well as several vehicles.

    N.    In connection with a dispute with a customer known as GM Manufacturing, Ludeman initiated legal action in the state of Iowa, rather in Rockford, which has resulted in a disadvantage for the Company in the form of increased legal costs, lost time, and exposure to counterclaims.

    O.    Ludeman's treatment of customers, including key customers, has resulted in a loss of sales to customers, such as BEHR and MPC. Further, Ludeman's conduct regarding certain customers during his tenure damaged the Company's good reputation for honesty, integrity, good faith and fair dealing, all of which the Company has had to rehabilitate.

    P.    In breach of his duties of loyalty to the Company, and during the time the Company was losing substantial amounts of money, Ludeman wrongfully approached other management employees of the Company to seek their involvement in a take-over of the Company without informing Jack Peterson.

18. By engaging in the acts mentioned above, Ludeman failed to act in the best interests of the Company in violation of his duties of care and loyalty.

19. Ludeman failed to exercise due care in arriving at many of his decisions, some of which are expressed above, as no reasonably careful and prudent person would have engaged in such detrimental and immoral acts of conduct.

20. Ludeman's mismanagement and breach(es) were the result of his lack of good faith in executing his duties as President of Industrial Molds.

21. Ludeman's negligent, reckless, and/or intentional mismanagement and breach(es) of the duties of care and loyalty have caused Industrial Molds to incur substantial

monetary and reputational damages.

22.  The damages sustained by Industrial Molds due to Ludeman's breaches of his fiduciary duties and negligent, reckless, and/or intentional mismanagement have caused damages in excess of $1,000,000.00.

WHEREFORE, Industrial Molds, Inc., requests judgment in its favor and against the Plaintiff and for an award of its fees, costs and such other relief as the Court deems just and proper.

INDUSTRIAL MOLDS, INC., Defendant

BY:  MCGREEVY WILLIAMS P.C.

BY:  /s/ Donald Q. Manning
Donald Q. Manning

Donald Q. Manning
McGreevy Williams, P.C.
6735 Vistagreen Way
P.O. Box 2903
Rockford, IL 61132-2903
815-639-3700
fax: 815-639-9400

STATE OF ILLINOIS　　　　　)
　　　　　　　　　　　　　　) SS.
COUNTY OF WINNEBAGO　　)

### AFFIDAVIT OF SERVICE

I, the undersigned, being first duly sworn on oath, depose and say that I served the Answer and Affirmative Defenses to Amended Complaint, upon the within named:

| | |
|---|---|
| William H. Dietrich, Esq.<br>Reinhart Boerner Van Deuren, s.c.<br>2215 Perrygreen Way<br>Rockford, IL 61107 | John H. Zawadsky<br>Christopher P. Banaszak, Esq.<br>Christopher W. Rawsthorne, Esq.<br>Reinhart Boerner Van Deuren s.c.<br>1000 North Water Street<br>Suite 2100<br>Milwaukee, WI 53202<br>**Via Regular Mail Only** |

by electronically filing said documents with the Clerk of the Federal Court using the CM/ECF filing system, at or about the hour of __3__ o'clock P.M., on the __4th__ day of January, 2008.

_____

Subscribed and sworn to before
me this __4th__ day of January, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
SHARON B. McKENZIE
Notary Public, State of Illinois
My Commission Expires 02/10/11

17