# EXHIBIT A

**Dale Ludeman v. Industrial Molds, Inc. and Tim Peterson**

**Case No. 07 C 50216**

# CONTRACT

THIS CONTRACT is made between:

INDUSTRIAL MOLDS, INC ............................................................................... COMPANY
and
DALE LUDEMAN............................................................................................... EMPLOYEE

### RECITAL

The Employee is the president of the Company. In order to provide for a continuing effective team of managers for the long-term welfare of the Company and to provide the Employee with job security, it is advisable that this Contract be executed by the parties.

It is agreed as follows:

1. <u>Employment</u>. The Employee shall continue in the present capacity as president of the Company with responsibilities as stated on Exhibit "A". The job description shall be reviewed periodically and revised as agreed between the parties.

2. <u>Vacation and Benefits</u>. The Corporation shall provide vacation and benefits for the Employee as customarily provided from time to time for all company employees. The Employee shall be entitled to _5_ (__) weeks paid vacation during each full calendar year he is employed under this Agreement. Employee's vacation during periods of less than one full calendar year shall be determined on a prorated basis. Any vacation that is not used by the end of the applicable year will be forfeited, unless a carry over is approved by the Corporation.

3. <u>Compensation</u>.

   A. The Employee's base salary shall be as established and shall be reviewed annually by the Company's Board of Directors, and may be increased but may not be decreased by the Company's Board of Directors except with the written consent of the Employee.

   B. The Employee shall be entitled to participate in the Management Bonus Program described on Exhibit "C" to this Agreement.

4. <u>Duties</u>. The Employee shall devote full time and his best efforts to accomplish the responsibilities assigned to him using his ability and best judgment to further the

Dale Ludeman Employment Agreement
Page 1



best interests of the Company. The Employee shall further comply with all terms and provisions of attached Exhibit "B".

5. Termination of Employment.

    A. Upon termination of employment by the Employee or by the Employer with cause, the Employee shall not for two years from the date of termination in an area of 150 miles of Rockford, Illinois: (1) as a partner, shareholder or other owner, officer or director of any corporation, engage in any like business as conducted by the Company or otherwise compete with the Company, nor (2) compete with the Company individually as a partner, employee, shareholder, officer, director of any corporation or in any other capacity regarding any customer of the Company existing as of date of termination.

    B. If the Employee is terminated by the Company without cause, then upon termination the Company shall compensate and pay to the Employee an amount equal to twice the total compensation received by the Employee from the Company, as measured by W-2 income, for the calendar year of the year of the highest compensation received by the Employee from the Company. For purposes of this Section 5B, the "Applicable Payment Date" shall be the effective date of the termination of Employee's employment.

    C. On the first of the following two events to occur: (1) the date on which Jack Peterson is no longer the majority shareholder of the Company, or (2) the date on which neither Jack Peterson, nor a person designated or nominated by the legal representative of Jack Peterson's estate or trust, is Chairman of the Board of Directors of the Company, then an amount equal to twice the total compensation received by the Employee from the Company, as measured by W-2 income, for the calendar year of the year of the highest compensation that has been received by the Employee from the Company to date, will immediately vest and become due and payable to the Employee. The termination of the Employee's employment shall not be a condition precedent to payment of the compensation due under this Section 5C. For purposes of this Section 5C, the "Applicable Payment Date" shall be the first of the two dates described above in this Section 5C.

    D. Termination "for cause" is defined as conduct by the Employee which includes criminal conduct directly detrimental to the financial well being of the Company, or any sustained conduct which is substantially detrimental to the best interest of the Company. This conduct includes but is not limited to substance abuse, default on the provisions of Exhibit "B" or failure to devote full-time to the Company business for reasons other than illness, disability or an approved leave of absence. The notice of intent to terminate for cause shall be in writing and shall identify the cause for termination the Company believes exists. If the cause for termination is criminal

conduct or other conduct that is not capable of being cured, the notice of termination shall so state and shall result in the Employee's immediate termination. If the cause for termination is substance abuse, a failure to devote full-time to the Company business or other conduct that is capable of being cured, then the notice of intent to terminate for cause shall identify the actions or results the Company believes must be taken or obtained by the Employee to cure the cause and shall give the Employee at least 30 days to cure the cause or to enter into an agreement with the Company for cure of the cause. If the Employee then fails to cure the cause or to enter into an agreement with the Company for cure of the cause within the period given, the Company may terminate this Agreement immediately by giving the Employee a second and final notice of such termination in writing.

E. If the Company fails to make the payments due under Section 5B or Section 5C on the Applicable Payment Date, it shall be obligated to pay the Employee interest on the amount due at the AMCORE Bank N.A., Rockford prime lending rate as in effect on the Applicable Payment Date plus one percent (1%).

6. <u>Default by Either Party</u>. In the event of default by either party, the non-defaulting party may pursue its or his remedy in the Circuit Court of Winnebago County. The prevailing party may recover all attorney's fees and court costs incurred in defending or prosecuting any action, whether the fees and costs are incurred before or after suit is commenced, as determined by the court. The Company may, in addition to recovery of damage, pursue an injunction or restraining order against the Employee for default on the terms of Exhibit "B" or default on the restrictive covenant provided in paragraph 5A, all without providing surety on its bond and without need to provide evidence that other remedies are inadequate.

7. <u>Entire Agreement</u>. This Agreement, including the Exhibits to this Agreement, supercedes any other employment agreements executed by the parties and constitutes the entire agreement between the parties with respect to the subject matter of this Agreement. This Agreement may not be modified or changed by any oral or verbal promise. Any proposed amendment or modification of this Agreement must be made in writing, reference made to this Agreement, and be executed by both parties.

This agreement is for the benefit of and binding upon the parties, successors, assigns, heirs and legal representatives

Dated: August 9, 2002.

INDUSTRIAL MOLDS, INC.
an Illinois corporation

BY: *[signature]*
Chief Executive Officer and
Sole Director

*[signature]*
DALE LUDEMAN

DRAFTED BY:
Gary L. Ecklund
Attorney at Law
4023 Charles Street
Rockford, IL 61108

**Exhibit "A"**
**Job Description - President**

I. **DEPARTMENT**
Administration

II. **SUPERVISION**
Must delegate assignments to responsible top management personnel.
Report to chief executive officer.

III. **DUTIES AND RESPONSIBILITIES**

1. Develop and implement the strategic direction for the Industrial Molds Group.

2. Provide direction and leadership for the management teams.

3. Assure that fiscal goals and objectives are achieved.

4. Assess new business opportunities and pursue the most promising ones.

5. Implement the continual improvement process.

6. Monitor the daily functions of:
   A. Sales
   B. Engineering
   C. Manufacturing
   D. Quality
   E. Accounting
   F. Company growth
   G. Manufacturing automation
   H. Mapics
   I. ISO 9001:2000

7. Actively promote positive reinforcement of safe working practices within the organization.

8. Must have a complete understanding of the business environments and running all aspects of a business.

## EXHIBIT B

## SUPPLEMENTAL AGREEMENTS: INVENTIONS, PROPRIETARY INFORMATION AND COVENANT NOT TO COMPETE

A.

In these Supplemental Agreements, the following shall have the meanings shown:

1. (a) The "Company" means INDUSTRIAL MOLDS, INC., a limited partnership organized under the laws of the State of Illinois, its successors and assigns, and any of its present or future subsidiaries, or organizations controlled by, controlling or under common control with it.

(b) "I" means the employee signing below. Such employee is also referred to by the use of first person pronouns, such as, "me," and "my."

(c) CEO - Chief Executive Officer.

2. "CONFIDENTIAL INFORMATION" means information disclosed to me or known by me as a consequence of or through my employment by the Company (including information conceived, originated, discovered or developed by me), not generally known in the relevant trade or industry, about any services, processes and products, including (but not limited to) information relating to programs, systems, program design specifications, and system, subsystem and program design concepts, client and customer lists, confidential information obtained from clients, research, development, INVENTIONS, and any confidential purchasing, accounting, engineering, marketing, merchandising or selling information, and any other information that is internal or otherwise treated by the Company as confidential information.

3. "INVENTIONS" means discoveries, concepts and ideas, whether patentable, copyrightable, or otherwise protectable (including but not limited to programs, system and program design concepts, and program specifications and coding, as well as improvements thereof), relating to any past, present or prospective activities of the Company with which activities I am acquainted as a result or in consequence of my employment by the Company.

4. "CONFLICTING SERVICE" means any service, process or product of any person or organization other than the Company which substantially resembles and competes with a service, product or process of the Company upon or with which I work for Company during any part or all of my employment with the Company or about which I acquire (at any time) CONFIDENTIAL INFORMATION. "CONFLICTING SERVICE"

shall include, but shall not be limited to: (1) the furnishing to any customer of any product or services provided by the Company, or (2) the furnishing of any data processing systems or software to or the consultations with any business entity to enable that entity to have, to develop or to improve its procedures relating to the business conducted by the Company. "CONFLICTING SERVICE" shall not include my providing the development or improvement of the procedures to my subsequent employer solely for my subsequent employer's own, internal application of those procedures to its own business; provided, however, that if during my employment with the Company: (a) my subsequent employer has been and during my work remains a licensee of the Company, or (b) the Company has been involved in actual solicitation of my subsequent employer, then my employment by that subsequent employer shall be considered "CONFLICTING SERVICE."

5. "CONFLICTING ORGANIZATION" means any person or organization or any person or organization controlled by, controlling or under common control with such person or organization, who or which is engaged in, or is about to become engaged in, research or development, production, marketing or selling of a CONFLICTING SERVICE.

### B.

I am employed by the Company, pursuant to the terms and conditions in the Employment Agreement and all CONFIDENTIAL INFORMATION which I have or will have access to during my employment has been disclosed to me solely by virtue of my employment with the Company and for the purpose of assisting me in performing me duties.

### C.

With respect to INVENTIONS designed, made or conceived by me, whether or not during my hours of employment and whether or not with the use of the Company facilities, materials or personnel, and whether solely or jointly with another or others, during my employment by the Company or, if based on or related to CONFIDENTIAL INFORMATION, within one hundred eighty days next following termination of my employment, without royalty or any other consideration to me therefore:

    a. I shall inform the CEO promptly and fully of the INVENTIONS by a written report, setting forth in detail the procedures employed and the results achieved. A report will be submitted by me upon completion of any studies or research projects undertaken on my behalf, whether or not in my opinion a given project has resulted in an INVENTION.

    b. I shall apply, at your request and expense, for United States and foreign letter patent or for copyright or other protection required at any time by you

either in my name or otherwise as you shall desire.

  c. I shall assign to the Company all of my rights to such INVENTIONS, and to applications for United States patent and to United States patent granted upon such inventions or to any rights of copyright or to any other statutory or common law rights.

  d. The assignment provisions of this Agreement do not apply to an invention for which no equipment, supplies, facility, or trade secret information of yours was used and which was developed entirely on my own time, unless (a) the invention relates (i) to the business of the Company or (ii) to its actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the Company.

### D.

The Company shall have the royalty-free right to use in its business, and to use, make and sell services, processes, programs, codes and/or products derived from any inventions, discoveries, concepts and ideas, whether or not patentable, copyrightable or otherwise protectable, as well as improvements thereof, which are not within the scope of INVENTIONS as defined above but which are conceived or made by me during my employment by the Company or with the use of assistance of your facilities, materials, or personnel.

### E.

I shall hold in a fiduciary capacity for the benefit of the Company all CONFIDENTIAL INFORMATION and, except with the prior written consent of the President, I will not, during the period of my employment with the Company and following the termination thereof for any reason duplicate, communicate, disclose, or make use of in any way, for my own benefit or for the benefit of any person, firm or entity other than the Company any CONFIDENTIAL INFORMATION or other information of the Company disclosed in confidence to me during my affiliation with the Company.

### F.

During my employment and during the period stated in Section 5A of my Employment Agreement, I will not interfere in any manner with Corporate contracts with its customers and suppliers, or with Corporate discussions with prospective customers for, or suppliers of, products or services; and will not solicit any person or entity then employed or affiliated with the Company to join me, whether as a partner, employee or consultant to any CONFLICTING ORGANIZATION.

G

Upon termination of my employment with the Company, all clients' materials; system, subsystem, and program documentation of whatever form; manuals; letters; records; notes; notebooks; reports; client lists; and all other materials which contain CONFIDENTIAL INFORMATION, then in my possession will be left with or promptly delivered to the Company.

H.

Regardless of the form in which they may be maintained, all programs; system, or program documentation of whatever kind; and all materials received from clients; and all CONFIDENTIAL INFORMATION are, and shall continue to be solely and exclusively the property of the Company whether prepared in whole or in part by me. I will not remove any of the foregoing from the Corporate offices or from its control, except in the course of my duties.

I.

During my employment and during the period stated in Section 5A of my Employment Agreement, I shall not contact for any business purpose incident to any CONFLICTING SERVICE any person or persons employed by the Company at any time during employment with the Company.

J.

All my obligations under this Agreement are binding upon my heirs, assigns, and legal representatives; all of the rights and obligations of the Company hereunder are for the benefit of and are binding upon its successors and assigns.

K.

The provisions of this Agreement shall be specifically enforceable by means of temporary restraining order and by preliminary and permanent injunction. I acknowledge that the injury which the Company would suffer as a result of my breach of this contract would be irreparable, would not be readily calculable on any reasonably precise basis and would be injury for which the Company would not be adequately compensated by money damages.

L.

The covenants and agreements set forth in Sections C, D, E, G and H above shall survive termination of my employment with the Company regardless of cause. The covenants and agreements set forth in Sections F and I above shall apply only

during my employment and during of the period stated in Section 5A of my Employment Agreement.

M.

This Agreement is signed this _9_ day of _August_, 2002.

INDUSTRIAL MOLDS, INC.

BY: _[signature] D. Peterson_
Its _CEO_

EMPLOYEE:

_[signature]_
DALE LUDEMAN

**EXHIBIT B**

**Dale Ludeman v. Industrial Molds, Inc. and Tim Peterson**

**Case No. 07 C 50216**



### INDUSTRIAL MOLDS, INC.
5175 27th AVE.
ROCKFORD, IL 61109-7183
(815) 397-2971
FAX 397-0474
www.industrialmolds.com

August 28, 2006

Dale Ludeman
President
Industrial Molds, Inc.
5175 27th Avenue
Rockford, IL 61109

Re: Termination For Cause

Dear Mr. Ludeman:

I am writing on behalf of Industrial Molds, Inc., with formal notice of your termination of employment pursuant to Paragraph 5(D) of your Contract with the Company. As is described in detail below, the termination will be effective immediately.

According to the terms of your Contract, you were retained as President of the Company with the duty to use your ability and best judgment to further the best interests of the Company. Exhibit A to the Contract sets forth your duties and responsibilities in detail, including the development and implementation of the strategic direction of the Company, the provision of direction and leadership to the management teams of the Company, assuring that financial goals are met, assessing business opportunities and pursuing the appropriate ones, monitoring the daily functions of the Company, and actively promoting the positive reinforcement of safe working practices within the Company.

Your Contract also provides that you may be terminated for cause if, among other things, you engage in conduct which is substantially detrimental to the best interests of the Company. If the cause for termination involves conduct that is not capable of being cured, the termination is immediate. Further, termination for cause invokes the non-competition provisions of Paragraph 5(A), which include, as you know, prohibitions for two years against your involvement in any entity that is in a like business or otherwise competes with the Company or is a customer of the Company, in an area within 150 miles of Rockford. Finally, in the event there is litigation between you and the Company, the prevailing party is entitled to recover attorneys' fees, costs, and expenses.

**HIGH QUALITY MOLD DESIGNERS AND BUILDERS**



EXHIBIT "B"

Your conduct has in fact been substantially detrimental to the best interests of the Company. You have received repeated demands and warnings from the ownership of the Company regarding your conduct but you have failed and refused and continue to fail and refuse to remedy the situation. As a result, your employment is hereby terminated for cause and on an immediate basis. The specific bases for the termination are: sustained lack of profit resulting from your failure to properly manage and oversee the operations and sales efforts of the Company, your failure and refusal to ensure the proper and timely repair and operation of the A77 spindle and Tree VMC's, as well the bastardization of parts to repair those and other machines, your refusal to order a spindle and attempts to mislead management about the matter, your agreement to customer terms which are injurious to the Company, your inappropriate communications with staff concerning management and owners and the related demoralization of the workforce, your direct involvement in lost sales and sales opportunities on a sustained basis, your failure to have in place and maintain processes for the operation and growth prospects for the Company, your general poor judgment, and your insubordination in failing to address inquiries from ownership.

Inasmuch as your employment is terminated immediately, arrangements will be made for you to retrieve any personal belongings you have on the premises. Likewise, demand is hereby made that you immediately return to the Company all originals and copies of any and documents, information, goods or other assets in your possession, including information stored in an electronic format. You will receive by separate communication information required to be provided to you by law.

Very truly yours;

Jack Peterson

DQM/ms